THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES HOUSBY, Plaintiff in Error.

*Opinion filed June 16, 1926.*

CRIMINAL LAW—*what is necessary to warrant conviction for rape—reversal.* To warrant conviction for rape it must be proved, beyond a reasonable doubt, that the accused had carnal knowledge of the complaining witness forcibly and against her will, and where the preponderance of the evidence establishes that the defendant did not forcibly ravish the complaining witness and tends to show that she consented to the act the conviction will be reversed.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. F. R. DOVE, Judge, presiding.

HOGAN & REESE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CARL H. PREIHS, State's Attorney, and ROY D. JOHNSON, for the People.

Per CURIAM: Plaintiff in error, James Housby, was convicted in the circuit court of Christian county of the crime of rape and his punishment fixed at imprisonment in the penitentiary for one year. He prosecutes this writ of error to reverse the judgment, on the ground, among others, that his guilt is not established beyond a reasonable doubt.

Plaintiff in error is nineteen years old and weighs about 130 pounds. He has lived in Kincaid for about ten years and is employed as a miner. Mary Harmon, the complaining witness, is nineteen years old and weighs about 150 pounds. She has lived in Kincaid about three years and is employed in the silk factory. July 4, 1925, Miss Harmon and Ethel Gilland went to a dance at Tovey, a village near Kincaid, with Ethel's sister and brother-in-law. There the girls met plaintiff in error and Archie Kiers. Shortly after two o'clock in the morning these four people left the dance hall in Kiers' automobile. About two miles from the dance hall one of the tires became flat and they stopped at the side of the road. It was here the act of sexual intercourse out of which this prosecution arises took place. Miss Gilland became offended at plaintiff in error because of the attention he was showing Miss Harmon and she left the group and returned to the dance hall. After the tire had been repaired the two boys and Miss Harmon drove back to Tovey, complaining witness riding on the front seat between the two boys. Kiers stopped the car in front of the dance hall and the three of them sat in the seat visiting with other persons who gathered about the car. Finally Kiers and plaintiff in error stepped out of the automobile and another young man seated himself with Miss Harmon and put his arm around her. She sat in the car visiting with several young men about the car, including Ethel's brother-in-law, with whom she came to Tovey. She made no complaint of having been assaulted. About four o'clock in the morning Miss Gilland brought Mrs. Amelia

Hull, a deputy sheriff, to the car and she placed plaintiff in error under arrest.

What occurred on the country road at the place where the assault is alleged to have taken place is told by the four persons present. Miss Harmon says that she was riding in the front seat with Kiers and that Miss Gilland was in the back seat with plaintiff in error; that when Kiers stopped the car Miss Gilland and plaintiff in error left the automobile, walked behind it and were absent several minutes; that while they were gone Kiers had sexual intercourse with her; that when plaintiff in error and Miss Gilland returned she was standing near the automobile, adjusting her clothing; that plaintiff in error left Miss Gilland and came over to her; that he took hold of her arm and twisted it, forcing her to lie down; that she resisted him and asked Kiers to help her; that Kiers told her he had had what he wanted and that she should let Jimmie have the same; that she tried to bite plaintiff in error and that he struck her; that he had sexual intercourse with her on the ground near the automobile, and that after he was through he helped repair the tire, after which they returned to town.

Miss Gilland testifies that she left the car with plaintiff in error and that they walked down the road back of the car; that they were gone fifteen or twenty minutes; that when they returned she saw Miss Harmon's white underskirt; that plaintiff in error left her and went over to Miss Harmon, grabbed her around the neck and threw her down; that she asked him to leave her alone, and that he only laughed; that witness then left the scene and walked back to Tovey. Shortly before the trial she signed a statement saying that the charge against Housby was untrue. On the trial she said she did not know the contents of the statement when she signed it.

Archie Kiers testifies that when he stopped the car Miss Gilland and plaintiff in error left the car and went behind it and stayed fifteen or twenty minutes; that he had sex-

ual intercourse with Miss Harmon in the car but found it crowded and asked her to get out of the car; that she told him she was wearing a borrowed dress and that she would have to take it off; that she did so and put it on the front seat of the car; that she then lay down on the ground and had sexual intercourse with him; that after they had finished, and while they were adjusting their clothing, plaintiff in error and Miss Gilland returned; that he went over to the car and began to repair the tire, paying no attention to what took place between Miss Harmon and plaintiff in error; that he heard no outcry and saw no struggle; that he worked with the car alone for a while and then plaintiff in error came to his assistance; that he saw Miss Harmon putting on her dress while they were repairing the tire; that when they were ready to return to Tovey they saw that Miss Gilland had gone; that Miss Harmon got into the front seat between him and plaintiff in error and drove back to town with them; that she made no complaint to him nor anyone else that plaintiff in error had struck her or otherwise violently assaulted her.

Plaintiff in error testifies that he and Miss Gilland left the car and walked down the road; that when they had been gone a short time they returned toward the car and saw Kiers and Miss Harmon on the ground; that he and Miss Gilland turned around and walked away for a while and then returned again; that when they came back Miss Harmon was fixing her clothes; that he left Miss Gilland and walked over to Miss Harmon and asked her if she would have sexual intercourse with him; that she consented and that they walked about thirty feet away from the car and lay down on the ground; that when they were through he returned to the car and helped Kiers repair the tire; that Miss Harmon put on her dress and got into the front seat with him and Kiers; that when they were ready to go they noticed that Miss Gilland had left them.

Seven women who had known the complaining witness for a number of years and most of whom were employed at the silk factory where she worked, testified that her general reputation for truth and veracity and for virtue and chastity was bad. Two persons testified that her general reputation for virtue and chastity was good.

To warrant a conviction for rape it must be proven, beyond a reasonable doubt, that the accused had carnal knowledge of the complaining witness forcibly and against her will. The record in this case shows without contradiction that Miss Harmon removed her dress and placed it on the seat of the automobile before she had sexual intercourse with Kiers. Her conduct before and after the alleged assault made by plaintiff in error shows that she was not a virtuous woman. Her conduct in front of the dance hall, after she had returned there with plaintiff in error, is inconsistent with her statement that she had been ravished by him thirty minutes before. She talked with Miss Gilland's brother-in-law, with whom she came to the dance, but made no complaint to him that she had been abused by plaintiff in error. Not until the deputy sheriff had been brought to the dance hall by Miss Gilland did Miss Harmon make any complaint concerning plaintiff in error's conduct. The complaint to the authorities was made by Miss Gilland, whom plaintiff in error left when he sought the company of Miss Harmon, and she has made contradictory statements out of court. We are of the opinion that the evidence for the prosecution, standing alone, does not warrant a verdict of guilty, and that, considering the whole record, the great preponderance of the evidence establishes that plaintiff in error did not forcibly ravish the complaining witness.

The judgment of the circuit court is reversed.

*Judgment reversed.*